

# THE ATTORNEY GENERAL
# OF TEXAS

WAGGONER CARR
ATTORNEY GENERAL

AUSTIN 11, TEXAS

November 16, 1964

Honorable Jerry Sadler
Commissioner of the General Land Office
   and Chairman of the School Land Board
Austin, Texas

Opinion No. C-349

Re: Whether the School Land Board
in fixing the consideration for
an amendment of a term mineral
lease may increase the royalty
Dear Mr. Sadler:                   chargeable under such lease.

You request our opinion as to the authority of the School
Land Board in granting amendments to existing mineral leases
under Article 5344c, Vernon's Civil Statutes, to increase the
royalty required to be paid.

We are informed that over the years the State of Texas
issued a considerable number of 25-year term oil and gas leases.
In order to prevent the rapid depletion of reserves under such
areas and to prevent wasteful production practices, and to in-
crease the revenue of the Public Free School Fund, House Bill
17, Acts of the 50th Legislature, Regular Session 1947, Chapter
82, page 139, codified in Vernon's as Article 5344c, Vernon's
Civil Statutes, was enacted. (Section 5 of House Bill 17).
This Act authorized the School Land Board, on application made
prior to October 1, 1948, to amend such leases so as to extend
the term thereof for as long as minerals are being produced in
paying quantities and authorized the Board to fix the consideration
for each such amendment. (Section 2 of House Bill 17.).

Section 2 of House Bill 17, Acts of the 50th Legislature,
Regular Session 1947, was amended in 1963 by the enactment of
Senate Bill 196, Acts of the 58th Legislature, Regular Session
1963, Chapter 174, page 485, so as to change the cutoff date
from October 1, 1948, to January 1, 1965. No other change was
made by the 1963 amendment. Section 2, as amended, now provides:

"Sec. 2. Any lease heretofore granted and
in good standing covering any of the lands

-1657-

or areas referred to in Section 1 of this Act, upon application by any owner thereof to the Commissioner of the General Land Office before January 1, 1965, may be amended under the terms of this Act so as to provide that such lease shall remain in effect as long after the expiration of its primary term as oil, gas, or other mineral covered by such lease is produced therefrom, provided any amendment executed by virtue of this Act shall include only those minerals covered in the original agreement to which said amendment is made; and providing further, that in amending such leases same shall be amended and renewed separately as to each mineral thereunder, except as to 'oil and gas' which may be contained in one lease and each such lease shall remain in effect as long after the expiration of its primary term as such mineral covered by such lease is produced therefrom in paying quantities. The School Land Board shall fix the consideration for each such amendment, which shall not be less than Two Dollars ($2) per acre, provided that any such amendment shall not change the original consideration in any lease to the extent that the state shall thereafter receive less than the original royalty provided in said leases. If the consideration so fixed is paid in cash within ninety (90) days after such consideration has been fixed, the Commissioner of the General Land Office shall execute and deliver to the owner of such lease an instrument evidencing such amendment. If the consideration is not paid within the ninety (90) days, the application shall be conclusively presumed to have been withdrawn. This Act shall not authorize the Commissioner of the General Land Office or the School Land Board to change or amend the lease involved in any other respect." (Underlined portion only change by the amendment - previously read October 1, 1948).

The intention of the Legislature is the law. 53 Tex.Jur. 2d 180, Statutes, Sec. 125. The Act allows a new consideration for the benefit of the State in exchange for permitting the extension amendment. The last sentence in Section 2, supra, therefore, would not prohibit a change in the consideration. Had the legislature intended that consideration be only in the nature of a cash bonus, we believe that it would have said so. At least, it would have been pointless to forbid royalty change only in a downward direction, if it were intended that no royalty change at all was to be permitted. Negating a portion of the

right seems by implication to be an affirmation of the remainder of the right. To hold otherwise requires that the royalty provision in the statute, for all practical purposes, be given no effect whatever.

In our opinion, the provision that the consideration must be paid in 90 days should be construed as meaning only the "bonus" part of the consideration, as obviously royalties would probably be paid over a much longer period of time. When so construed, all parts of the statute are harmonized and every part of the statute is given meaning. This accords with standard rules of statutory construction. 53 Tex.Jur.2d 227 et seq., Statutes, Secs. 159-60.

Our conclusion is strengthened by the fact that the identical provisions prior to the change of the cutoff date were construed by the School Land Board as authorizing the royalty to be increased as part of the consideration for the amendment of leases, and the royalty in numerous leases was so increased. The Legislature, by the reenactment of these provisions in the 1963 Act approved such construction. Isbell v. Gulf Union Oil Co., 147 Tex. 6, 209 S.W.2d 762 (1948).

You are therefore advised that the Board, in fixing the consideration for a lease amendment under Article 5344c, Vernon's Civil Statutes, may increase the royalty provided in such lease in addition to charging the bonus provided in Article 5344c.

## SUMMARY

The School Land Board in permitting an amendment to an existing term lease under Article 5344c, Vernon's Civil Statutes, may increase the royalty chargeable under such lease as a part of the consideration for such amendment.

Yours very truly,

WAGGONER CARR
Attorney General

By *John Reeves*

John Reeves
Assistant

JR:ms

Hon. Jerry Sadler, page 4 (C-349)


APPROVED:

OPINION COMMITTEE
W. V. Geppert, Chairman
Milton Richardson
Malcolm L. Quick
Brady Coleman

APPROVED FOR THE ATTORNEY GENERAL
By:  Roger Tyler